369

1  more persuasive than that of Mr. Shabaz.  As I said, all --
2  well, not all, but I find that the credible evidence is that
3  Mr. Shabaz was presented with the form after he started talking
4  with the agents and officers about the case.  The government
5  testimony is that part of the information obtained that was
6  written on the form was defendant's cell phone number.
7  Defendant says he did not supply that number, but he offered no
8  evidence about how the government got that information if not
9  from him.
10         The government asking him for that information and
11 him supplying that information is consistent with the defendant
12 saying that he wanted to talk to Khabir, but he did not have
13 his phone number, but that it was available in his cell phone
14 at the home.  And it would be then consistent with all of that
15 for Mr. Shabaz to provide the cell phone number so that the
16 phone could be accessed and the number could be located.
17         So, based on that evidence, I find that the form was
18 filled out when it was presented to the defendant and when the
19 defendant indisputably signed it.  There is no dispute that, in
20 fact, Mr. Shabaz signed the form.
21         Moreover, since I find that Mr. Shabaz voluntarily
22 decided to talk to the agents and officers without an attorney
23 despite refusing to sign the advice of rights form and that the
24 consent to search form was signed after that, I don't find that
25 there's anything about the consent form that would be tainted

1 by a Miranda violation, because I do not find there is a
2 Miranda violation.
3        Now, in making these findings, I have considered that
4 the agents and officers plainly were interested in having
5 Mr. Shabaz make statements despite their view that they had
6 strong DNA evidence.  In a way, the government kind of resisted
7 that a little bit, which I don't understand exactly why,
8 because plainly, if they weren't interested in trying to talk
9 to Mr. Shabaz to get statements, they could have brought him
10 right down to the courthouse here and had an initial
11 appearance.  I can't imagine that there was any reason to
12 bring -- have an intermediate step of bringing him to the
13 Calumet police station and to sit him in an interrogation room
14 and to ask him to waive rights so that they could question to
15 get statements, that there's any reason for that other than
16 they wanted to get statements.
17        But I also don't understand that there's any
18 assertion that there is a violation of Mr. Shabaz's rights
19 simply because the agents and officers took him to the Calumet
20 police station instead of immediately to court in order to see
21 if he would be willing to give statements.  The alleged
22 violation here isn't that they took him to the Calumet police
23 station and asked him to waive rights and question him.  The
24 alleged violation is that they questioned him despite his
25 alleged refusal to waive Miranda rights, and I have already

1  found that the government did not violate his rights in giving
2  these statements.
3        I have also considered that the interest of
4  whether -- I'm sorry, the question of who is interested in
5  terms of consideration of bias, motive, and interest of
6  witnesses.  Certainly, Mr. Shabaz's interest is plain.  He'd
7  like to have the statements suppressed, and so any time a
8  fact-finder knows that somebody has an interest in the outcome,
9  you consider that in assessing the testimony, so I do that.
10       But I reject the government's assertion that the
11 agents and officers who testified are simply neutral and
12 disinterested witnesses, as they say, without any horse in the
13 race.  They plainly have an interest in defending their
14 conduct; and if their conduct was improper, they plainly would
15 have a motive to present testimony in a way to avoid that
16 finding.  So, I have considered that.  And I reject the notion
17 that somehow agents who interrogate a defendant, when they
18 testify about that interrogation, are somehow neutral
19 bystanders who have no bias or motive or interest in testifying
20 about what occurred.
21       But I have -- so, I have taken that into
22 consideration.  But for the reasons that I have expressed
23 above, I find that the government testimony about what happened
24 is more credible than that of Mr. Shabaz.  And so for the
25 reasons that I have stated, I will recommend that the motion to

1  suppress be denied.
2          Now, this was given to me for a report and
3  recommendation.  My oral rulings on the record will stand as
4  that report and recommendation and the explanation for it.
5          Since this is a report and recommendation, the
6  defense obviously has the right to object to that to Judge
7  Conlon, if you wish to do so.  Specific written objections to
8  the report and recommendation may be served and filed within 10
9  business days from the date that the order is served.  The
10 failure to file objections with the District Court within the
11 specified time will result in a waiver of the right to appeal
12 the findings that I've made, both factual and legal, in this
13 report and recommendation.
14         So, again, thank you again for very good
15 presentations, and thank you for flexibility in scheduling.  I
16 know we had to do this in a little bit of a piecemeal way, but
17 I think that it allowed for the effective presentation of all
18 the evidence.
19         THE DEFENDANT:  Excuse me, your Honor.  I'd like to
20 make a statement directly to the Court, please.
21         THE COURT:  Mr. Shabaz, let me -- let me do this.
22 You have an attorney for a reason.  The reason you have an
23 attorney is because she is experienced in the law far more than
24 you are, far more than most laypeople would be.  You are -- she
25 is there to give you advice and to make sure that the things

that you do in aid of your defense are constructive and not destructive.

You may think that it's a good idea to make a statement. Ms. Domph may agree with you, but then again, she may not. So, what I'm going to do is we're going to go off the record, and I'm going to direct that you talk with her about what it is you want to say to get her advice and counsel about that before you say anything that in the end may or may not be a good thing for you to say. All right?

THE DEFENDANT: I understand, your Honor. That's not necessary.

THE COURT: But I'm requiring it. I'm requiring it.

THE DEFENDANT: Okay. I'll consult with my attorney, but after that, I'd still like to make a direct statement to the Court.

THE COURT: Well, I want you to consult with your attorney and be guided by what she says.

Off the record.

(Discussion held off the record.)

THE COURT: Let's go back on the record.

Has there been an opportunity for Mr. Shabaz to consult with his counsel about his desire to make some statement?

MS. DOMPH: There has.

THE COURT: And what does Mr. Shabaz wish to do?

```
 1            MS. DOMPH:  Mr. Shabaz wishes to speak to you.
 2            THE COURT:  All right.  Now, in doing that, I just
 3  want to say one other thing, and my guess is that Ms. Domph has
 4  told you this.  We are now done with the suppression hearing.
 5  I have issued my ruling.  You are free to say what you want to
 6  say, but what you say can be used against you.
 7            THE DEFENDANT:  I understand that.
 8            THE COURT:  All right.  You understand that fully?
 9            THE DEFENDANT:  Yes, I do.
10            THE COURT:  All right.  Whether it is wise or unwise,
11  it is your decision.  If you want to make a statement, I can't
12  prevent you from doing that.  I'm not going to walk off the
13  bench to prevent you from doing that.  And you've had a chance
14  to talk with your attorney about it.  If you wish to make a
15  statement, go ahead.
16            THE DEFENDANT:  Okay.  First of all, I'd like to
17  start with the -- the events, obviously, on the 21st --
18            THE COURT:  Let me say this:  Are you going to go
19  through everything that occurred?
20            THE DEFENDANT:  No.
21            THE COURT:  Because you testified, and I've heard
22  your testimony, and we're not going to have a do-over of
23  testimony.
24            THE DEFENDANT:  I understand.
25            THE COURT:  You understand that?
```

375

THE DEFENDANT: Yes.

THE COURT: A statement is not rehashing everything that's happened.

MS. DOMPH: May I have a minute?

THE COURT: Yes.

(Discussion held off the record.)

THE DEFENDANT: May I continue?

THE COURT: I will let you speak, but I want to emphasize that if what I perceive is that you're simply rehashing the testimony, then we are going to terminate this, because that's not what we're here for.

I respect that you will disagree with what I've ruled. Anybody has the right to disagree. But, you know, it's given to me, hearing all the evidence, to make a decision. I have done that. You have a right to appeal that to Judge Conlon. If she thinks that I'm incorrect and you persuade her of that, then she'll come up with a different ruling. But I have ruled on this, and so we're not going to simply rehash all the evidence that we heard.

THE DEFENDANT: I understand.

THE COURT: All right.

THE DEFENDANT: I just wanted to start by drawing attention to the time frame. You didn't seem to put much weight on the fact that there was 15, perhaps 20 minutes, something like that, of time from the time I arrived at the

1  police station to the time the advice of rights form was
2  presented. It's pretty much unexplained by the government's
3  side; whereas, I did explain it.
4      You stated that right before or right at the
5  beginning of the interview, I requested phone calls. That was
6  not my testimony or any of the officers' testimony. The
7  testimony was that the phone calls -- the request for the phone
8  calls came a little bit later.
9      You stated that Wentz and Watson were consistent
10 about the introductory statement made by Watson. One officer
11 stated that there was no introductory statement by Watson. The
12 other officer, the advice of rights form was presented
13 promptly, promptly followed by the consent to search warrant.
14 Another officer stated that there was an introductory
15 statement, then the presentation of the advice of rights, and
16 then the presentation of the consent to search form. Another
17 officer testified that there was an introductory statement,
18 then the presentation of the advice of rights, then some
19 questioning, and then the presentation of a consent to search.
20     Agent Watson himself contradicted himself on the
21 stand when he first said that the advice of rights was
22 presented and then promptly after, the consent to search form
23 was presented. Then he turned his story around within the time
24 frame that Ms. Domph was questioning him.
25     THE COURT: All right. What you are essentially

doing is explaining why you disagree with my ruling. I accept that you disagree with my ruling. And the matters that you point out, if you think that they are sufficiently important that they make my ruling something that Judge Conlon should overturn or reject, then you're free to do that.

THE DEFENDANT: That's my purpose, actually.

THE COURT: Then the vehicle to do that is in something to file with Judge Conlon, and not to state to me.

THE DEFENDANT: I understand. I just feel if it's better that I put it on the record.

THE COURT: Well, it's not better if you put it on the record, because your attorney has the right to file an objection if you want to do that.

THE DEFENDANT: I understand. Can I just say one more thing and then I'll be finished?

THE COURT: Sure.

THE DEFENDANT: You stated that Watson questioned me about bomb-making material. I don't think there was any testimony by me or the agents during the hearing that Watson questioned me about bomb-making material.

THE COURT: All right. Well, I've made my ruling. I don't need to comment on what you say. My failure to comment obviously does not reflect any agreement with either the recitation of what you say or whether those were matters of significance to the ruling.

```
 1        All right.  Thank you very much.
 2        THE DEFENDANT:  Thank you.
 3        (Proceedings concluded.)
 4                        CERTIFICATE
 5
 6        I hereby certify that the foregoing is a true and
 7   correct transcript of the proceedings in the above-entitled
 8   case.
 9
10   _____      _April 18_____, 2008.
11   CHARLES R. ZANDI
     Official Court Reporter
12
```