IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 07 CR 855 |
| v. ) | |
| ) | Suzanne B. Conlon, Judge |
| SAMUEL SHABAZ, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Samuel Shabaz is charged with two bank robberies and one attempted bank robbery by force or violence under 18 U.S.C. § 2113(a). Shabaz moved to suppress statements obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and evidence seized thereafter. The motion was referred to a magistrate judge, who concluded that Shabaz: (1) knowingly waived his *Miranda* rights and volunteered statements to law enforcement personnel; and (2) voluntarily consented to the government's search of his property. The magistrate judge recommended denial of Shabaz's motion. Shabaz objects to the magistrate judge's findings. The court has reviewed the transcript of the evidentiary hearing, the evidence submitted at the hearing, and the pleadings. For the reasons discussed below, the court adopts the magistrate judge's recommendation and denies the motion to suppress.

## THE SUPPRESSION HEARING

The hearing took place on March 31, April 1, April 3, and April 8, 2008. The magistrate judge orally issued his report and recommendation on April 11, 2008. The government's witnesses at the hearing were FBI agents Brian Wentz and Bryan Watson, and Oak Lawn police detectives Dennis Keenan and James Hunt. Shabaz testified on his own behalf.

I.  **TESTIMONY BY GOVERNMENT WITNESSES**

Shabaz was arrested by FBI agents and Oak Lawn police officers at his home on December 21, 2007. Tr. 7, 74. He was transported to the Calumet City police station. Tr. 8. Upon arrival, he requested to use the bathroom. Tr. 8. At some point prior to receiving his *Miranda* rights, FBI agent Watson testified that he heard Shabaz use the word "attorney" or "lawyer." Tr. 79. Watson did not recall the context in which the word was used, nor did he inquire further. Tr. 79, 124. He was certain Shabaz did not request an attorney. Tr. 79-80. The other law enforcement officers testified that Shabaz never requested an attorney at any time, nor did he mention an attorney. Tr. 12, 25, 79, 142-144, 146, 177, 186.

After Shabaz used the restroom, the law enforcement officers accompanied him to an interview room. Tr. 144, 180. Oak Lawn police detective Christine McGuire was also present during portions of the interview, but did not testify at the hearing. Tr. 105, 180.

FBI agent Watson made introductory remarks to Shabaz, identifying law enforcement personnel, explaining why Shabaz was arrested, and stating the topics law enforcement officers wished to discuss. Tr. 10, 78, 114, 199. FBI agent Watson then read Shabaz an advice of rights *Miranda* waiver form. Tr. 14, 144. Shabaz stated he understood his rights, but refused to sign the waiver form. Tr. 15. After refusing to sign the form, Shabaz told Watson he would continue speaking to the FBI agents and police detectives and stop at any time if he felt he did not want to answer any question. Tr. 81-82, 145, 181-82. Shabaz then made incriminating statements regarding his involvement in the robberies of the TCF bank at 9801 S. Cicero Ave, Oak Lawn, Illinois, on April 26, 2007 and on October 1, 2007, as well as the attempted robbery of the Standard Bank and Trust at 4700 111th Street, Oak Lawn, Illinois, on September 21, 2007. Tr.

2

89-90, 184-85. Shabaz signed and identified himself in surveillance photos from each of the bank robberies. Tr. 91.

Early in the interview, Shabaz requested permission to call his girlfriend, Maritza Velasquez, and a friend named Khabir, who Shabaz was scheduled to pick up at the airport. Tr. 10, 247, 271. Shabaz did not have Khabir's telephone number, but he told law enforcement officers they could retrieve Khabir's number from his cell phone at his residence.[1] Tr. 19, 29. Shabaz was not permitted to call Velasquez or Khabir until the interview was concluded, because of the possibility he might call them to further or conceal criminal activity. Tr. 10-11, 29-30, 134. When Shabaz called Velasquez after the interview, he did not request her to find him an attorney. Tr. 187.

Shortly after Shabaz refused to sign the advice of rights waiver form, he was presented with a consent-to-search form. Tr. 15, 17. The form consented to the search of Shabaz's house, two Dodge vans on his property, and his cellular phone. Tr. 17-18. These search items were handwritten on the form in Shabaz's presence prior to his signature. Tr. 18, 83. Shabaz gave law enforcement officers his cell phone number to be included on the form so that they could retrieve Khabir's phone number for him. Tr. 19.

At no time during the interview did any law enforcement officers promise leniency in exchange for Shabaz's cooperation. Tr. 12, 86, 94, 186.

## II.    SHABAZ'S TESTIMONY

---

[1] During the interview, FBI agents remained at Shabaz's residence. FBI agent Wentz remained in communication with the FBI agents at the residence throughout the interview. Tr. 10.

3

Shabaz's testimony substantially differs. When he was arrested and taken into custody, he testified he did not know why he was arrested and was not informed why he was taken into custody. Tr. 235-36. When he was taken to the Calumet City police station, he asked to use the restroom. After using the restroom (and prior to entering an interview room), Shabaz testified that he asked FBI agent Watson, "am I going to be able to get an attorney?" Tr. 241, 276. Watson replied, "let's just get you down here," escorting Shabaz to the interview room. Tr. 241, 276-77.

When they entered the interview room, Watson told him that "we know what you've been doing," and asked him "to start at the beginning." Tr. 243-244. Shabaz requested an attorney several times but was ignored. Tr. 243, 245-47, 249, 290. He testified he wanted to make a phone call to Velasquez to inform her of his situation and to ask her to contact a lawyer. Tr. 290. He was refused phone calls until he agreed to cooperate with law enforcement officers. Tr. 246-48. Shabaz testified he was repeatedly told that he would be treated with leniency if he cooperated. Tr. 249, 280. This exchange occurred for approximately ten or more minutes prior to receiving the advice of rights waiver form. Tr. 250. When Shabaz refused to sign the waiver form, law enforcement officers continued their questioning without inquiring why he refused to sign the form. Tr. 254.

Shabaz stopped requesting an attorney because he believed he would not be provided one. Tr. 255. He made incriminating statements and signed the consent to search form because he would be unfavorably treated if he did not. Tr. 262. He testified that when he signed the consent to search form, the form was blank with respect to the places to be searched. Tr. 251, 258.

4

After the interrogation, Shabaz was allowed to telephone Velasquez. He testified on direct examination that he "explained his situation to her." Tr. 267. On cross-examination, he claimed he asked Velasquez to contact an attorney for him. Tr. 285.

Shabaz was convicted of armed robbery in 1997 and 2001. Tr. 285-86. He was advised of his *Miranda* rights on a previous occasion. Tr. 286. Prior to his 1997 conviction, he signed a waiver of rights form similar to the form in this case. Tr. 288.

## THE MAGISTRATE JUDGE'S FINDINGS

After hearing the testimony, the magistrate judge concluded the evidence does not provide a basis for suppressing the evidence. The magistrate judge found that because Shabaz refused to sign the advice of rights waiver form, the government had a heavy burden to establish by a preponderance of the evidence that Shabaz knowingly and voluntarily waived his *Miranda* rights before his admissions to law enforcement officers. Tr. 352-53 (citing *United States v. Jenkins*, 440 F.2d 574, 576 (7th Cir. 1971); *United States v. Millen*, 338 F. Supp. 747, 752 (E.D. Wis. 1972); *United States v. Hedgemen*, 368 F. Supp. 585, 598 (N.D. Ill. 1983)). The magistrate judge concluded the government sustained its heavy burden.

First, the magistrate judge found Shabaz's *Miranda* rights were not violated at the time of the arrest, because he was not questioned nor gave statements at that time. In considering the circumstances of the arrest, the magistrate judge found that Shabaz was not so overwhelmed to render *later* statements at the Calumet City police station involuntary. Tr. 355.

Second, the magistrate judge credited Shabaz's account that he asked Watson, "am I going to be able to get an attorney?" prior to entering the interview room. Tr. 357-58. However, when Watson responded by directing Shabaz to the interview room, the magistrate judge found that

Shabaz was not denied a right to counsel at that time, but the question was deferred until he entered the interview room. Tr. 358.

Third, the magistrate judge found Shabaz knowingly waived his *Miranda* rights and volunteered inculpatory statements in the interview room. Although the magistrate judge found that Shabaz was handcuffed during the interview, he otherwise credited the government witnesses' accounts of the interview over Shabaz's. The magistrate judge found that Watson made brief introductory comments notifying Shabaz why he was under arrest, and then advised Shabaz of his *Miranda* rights contained in the advice of rights waiver form. Tr. 362. When Shabaz refused to sign the waiver form, the magistrate judge found he agreed to speak to the law enforcement officers, notifying them he would stop if and when he decided to do so. Tr. 263. The magistrate judge concluded that Shabaz began to talk to the FBI agents and Oak Lawn detectives without any promises and without asking for an attorney. Tr. 363.

Fourth, the magistrate judge concluded Shabaz freely consented to the search of his property. He was given the consent to search form after he was presented with the waiver form. The magistrate judge credited the government witnesses' rendition that the handwritten consent to search information was filled in during Shabaz's questioning, and that he signed the final copy with full knowledge of the handwritten locations to be searched.

Fifth, the magistrate judge discredited Shabaz's testimony that he requested to call his girlfriend to secure an attorney for him. The magistrate judge found that when Shabaz had the opportunity to call Velasquez, he did not ask her to contact an attorney. The magistrate judge also concluded Shabaz's request for phone calls was reasonably denied when the interview began because there was a reasonable fear that he might contact co-conspirators.

I.  **STANDARD OF REVIEW**

The court must "make a *de novo* determination of those portions of the [magistrate judge's] report or proposed findings or recommendations to which objection is made." 28 U.S.C. § 636. The court is not required to hold further hearings to review the magistrate judge's findings or credibility determinations. *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). Rather, the district court has discretion to "accept, reject, modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1); *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995). The court may decline to exercise its *de novo* discretion in reviewing the credibility determination made by the magistrate judge. *Raddatz*, 447 U.S. at 676, 100 S.Ct. 2406. Indeed, the court may give the magistrate judge's credibility determinations such weight "as their merit demands." *Id.* at 683, 100 S.Ct. 2406.

II. **REFUSAL TO SIGN THE ADVICE/WAIVER OF RIGHTS FORM**

Shabaz objects to the magistrate judge's finding that he voluntarily waived his *Miranda* rights, especially considering that he refused to sign the advice of rights waiver form. The two issues before the court are whether Shabaz knowingly and voluntarily waived his right against self-incrimination and whether he volunteered statements to law enforcement officers. The government bears the burden of proving these requirements by a preponderance of the evidence. *United States v. Jackson*, 300 F.3d 740, 748 (7th Cir. 2002); *Colorado v. Connelly*, 479 U.S. 157, 168-69, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Because Shabaz refused to sign the advice of rights waiver form, the government has a heavy burden to establish waiver. *Jenkins*, 440 F.2d at 576.

7

In assessing Shabaz's waiver and statement, the court considers "whether, in light of the totality of the circumstances, the statement was the product of a rational intellect and free will." *United States v. Brooks*, 125 F.3d 484, (7th Cir. 1997).[2] A written waiver is not required; waiver may be inferred from Shabaz's understanding of his rights coupled with conduct reflecting a desire to give up the right to remain silent. *North Carolina v. Butler*, 441 U.S. 369, 373-76, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); *Jackson*, 300 F3d at 748. His refusal to sign a waiver may suggest that subsequent statements were not voluntary, but even when a defendant has expressly declined to sign a waiver, subsequent statements may be determined voluntary. *See, e.g., United States v. Crisp*, 435 F.2d 354, 358-59 (7th Cir. 1970); *United States v. Banks*, 78 F.3d 1190, 1196-98 (7th Cir.1996), *vacated on other grounds*, 519 U.S. 990, 117 S.Ct. 478, 136 L.Ed.2d 373 (1996), *on remand, United States v. Mills*, 122 F.3d 346 (1997), *cert. denied*, 522 U.S. 1033, 118 S.Ct. 637, 139 L.Ed.2d 615 (1997). A confession is involuntary only where it was obtained through police coercion or overreaching that overbore the accused's free will. *United States v. Murdock*, 491 F.3d 694, 699 (7th Cir. 2007).

Shabaz claims that his refusal to sign the advice of rights waiver automatically invoked his right to remain silent, rendering any statements resulting from subsequent interrogation inadmissible. He relies on *Hedgemen*, 368 F. Supp. at 585, *United States v. Nielsen*, 392 F.2d 849 (7th Cir. 1968), and *Jenkins*, 440 F.2d at 574, where defendants' refusal to sign waivers of rights forms were held to constitute a desire to remain silent. The magistrate judge rejected application of these cases, instead relying on *Crisp*, 435 F.2d at 354, where the Seventh Circuit

---

[2]Other factors include: "defendant's background and conduct, the duration and conditions of detention, the mental and physical condition of the defendant, the attitude of the police, and whether the police utilized psychological or physical coercion." *Jackson*, 300 F.3d at 748.

8

held that even though a defendant refuses to sign a rights waiver form, he may still be deemed to have waived his rights if he persists in an expressed desire to make a statement. The magistrate judge found that *Crisp* was applicable to this case because according to the government witnesses, Shabaz unequivocally stated he would speak voluntarily without an attorney and would stop when he wanted (even though he refused to sign the waiver). The magistrate judge credited this testimony over Shabaz's testimony that he was coerced to make statements in exchange for leniency for several persuasive reasons.

Shabaz's testimony that his waiver was involuntary appeared to lack credibility because there was no evidence of coercion in the interrogation room. Although he was handcuffed, he did not testify to any physical discomfort or coercion. He was allowed to use the restroom, and was given water while in the interview room. The interview was not unduly long, lasting approximately an hour.

Shabaz's testimony that he was coerced by promises that law enforcement personnel would "go to bat" for him was undermined by the fact that he claimed he trusted those he *knew* were violating his rights. Tr. 366. Although he testified he was confused and had no idea what was going on, the magistrate judge observed that he was not naive or unschooled in his rights. Rather, his testimony reflected that he was sophisticated and familiar with the criminal justice system. Tr. 367. The magistrate judge reasonably concluded that it was likely that Shabaz – as an experienced criminal – hedged his bets by refusing to sign the waiver while agreeing to cooperate to ascertain whether he could benefit from volunteering statements. Due to all of these reasons, the magistrate judge credited the government witnesses' testimony and found that the government met its burden in showing that Shabaz knowingly waived his *Miranda* rights and

volunteered incriminating statements. *Compare Hedgemen*, 368 F. Supp. at 585; *Nielsen*, 392 F.2d at 849; *Jenkins*, 440 F.2d at 574.

After reviewing the record, there is no reason to set aside the magistrate judge's credibility determination and findings. Shabaz's conduct demonstrated a waiver of his right to remain silent. Although aware of his rights, he immediately began talking to law enforcement officers after refusing to sign the waiver form and continued to do so for an hour. He never requested an attorney and never asked that the questioning be stopped. These facts support a finding Shabaz waived his *Miranda* rights. *See, e.g., United States v. Smith*, 218 F.3d 777, 781-82 (7th Cir. 2000) (despite failure to sign waiver form, record established statements were voluntary); *United States v. Gardner*, 516 F.2d 334, 341-42 (7th Cir. 1975) (same); *Crisp*, 435 F.2d at 354.

### III.   QUESTIONING AFTER REQUEST FOR A LAWYER

Shabaz contends his *Miranda* rights were violated because questioning did not cease following a request for counsel. Once a suspect invokes the right to counsel, all interrogation must cease until counsel is present, unless the accused himself initiates further communication. *Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *United States v. Jackson*, 189 F.3d 502, 511 (7th Cir. 1999). If the accused is interrogated after he has invoked his right to counsel, any incriminating statements he makes are inadmissible. *Edwards*, 451 U.S. at 487, 101 S.Ct. 1880.

The magistrate judge gave credence to Shabaz's testimony that he asked Watson if he would be able to get an attorney prior to entering the interview room. Although Watson testified that Shabaz never requested an attorney, he also testified that he heard Shabaz use the word

10

"attorney." The magistrate judge construed this testimony in favor of Shabaz. However, the magistrate judge found that when agent Watson responded to Shabaz's request by stating, "let's just get you in here," (directing Shabaz to the interview room), Watson did not deny Shabaz's right to counsel, but rather deferred the question until the parties entered the interview room when he was advised of his right to counsel.

Shabaz contends it is undisputed that he was immediately questioned upon entering the interview room. He cites his own testimony that he repeatedly requested an attorney within 15-20 minutes. This testimony, however, directly conflicts with that of the government witnesses, which indicated that upon entering the interview room, Shabaz was briefly told why he was there, and was then immediately given *Miranda* warnings. The magistrate judge found the government witnesses' testimony more credible.

The court adopts the magistrate judge's credibility determination and finding that when Shabaz entered the interview room, Watson informed him why he was arrested and the subjects that the law enforcement officers wished to discuss. Tr. 10, 78, 114, 199. The court also adopts the finding that immediately after this brief introduction, Watson read Shabaz his *Miranda* rights.

Contrary to Shabaz's objection, Watson's introductory remarks did not constitute an "interrogation" in violation of *Miranda*. *See Rhode Island v. Innis*, 446 U.S. 291, 299, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). "Interrogation" refers to "express questioning" as well as "any words or actions on the part of law enforcement (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 300-01, 100 S.Ct. 1682; *United States v. Abdulla*, 294 F.3d 830, 834 (7th Cir. 2002). The test is whether a reasonable objective observer would have believed that the

11

law enforcement officer's statements to the defendant were reasonably likely to elicit an incriminating response. *Abdulla*, 294 F.3d at 834 (internal quotations omitted); *United States v. Westbrook*, 125 F.3d 996, 1002 (7th Cir. 1997).

Watson's introductory words were not reasonably likely to elicit an incriminating response because they were in response to Shabaz's own inquiry as to why he was there. *See, e.g., United States v. Briggs*, 273 F.3d 737, 740 (7th Cir. 2001) (a response to an inquiry by the defendant does not constitute "interrogation") (collecting cases); *United States v. Hendrix*, 509 F.3d 362, 374 (7th Cir. 2007). The record reflects Watson's remarks were consistent with an explanation why Shabaz was under arrest. The court adopts the magistrate judge's determination that Shabaz's right to counsel was not violated prior to advice of his *Miranda* rights.

## IV.    DENIAL OF REQUEST FOR TELEPHONE CALLS

Shabaz was denied requested phone calls to Velasquez or Khabir at the outset of the interview. He contends this denial violated his *Miranda* rights. *See, e.g., United States v. Millen*, 338 F. Supp. 747, 752 (D.C. Wis. 1972) (defendant's request for a phone call constituted an assertion of *Miranda* rights). Shabaz insisted in his testimony that he requested to call Velasquez so she would contact an attorney. Tr. 62, 121. The magistrate judge did not lend credibility to this testimony, instead finding that based on the evidence there was no indication that Shabaz requested phone calls to contact an attorney. Tr. 358-61.

A review of the transcript supports this finding. When Shabaz was allowed to call Velasquez after the interview, Oak Lawn detective Hunt testified that he did not hear Shabaz request an attorney. Tr. 187. On direct examination, Shabaz himself failed to testify that he told

12

Velasquez that he needed an attorney.[3] There was no corroborating evidence, from Velasquez or any other source indicating that Shabaz requested an attorney. To the contrary, the government witnesses testified that Shabaz never gave any indication that his phone calls were for the purpose of requesting an attorney. As the magistrate judge duly noted, law enforcement officers reasonably denied Shabaz's open-ended phone call request because of the need to confirm that a call would not be in furtherance of criminal activity. The evidence supports this conclusion, especially considering that bomb threats were purportedly made in the underlying robberies. Tr. 136. The law enforcement officers' denial of Shabaz's request to call Velasquez or Khabir at the beginning of the interview did not violate his *Miranda* rights.

## V.    FALSE PROMISES OF LENIENCY

Shabaz contends that false promises of leniency rendered his statements involuntary, violating his Fifth Amendment rights. Again, his argument assumes that the magistrate judge should have credited his testimony over the contrary testimony of government witnesses. *See* Tr. 363, 21, 82, 146, 187. The magistrate judge discredited Shabaz's account that he was swayed by an offer of leniency, noting that Shabaz was aware of his rights, yet surprisingly claimed to trust those who he claimed were violating his rights. Tr. 365-68. The court adopts the magistrate judge's credibility determination, and the finding that Shabaz's will was not overborne by any promises of leniency.

## VI.    FAILURE TO PRODUCE MATERIAL WITNESSES

---

[3]As the magistrate judge pointed out, Shabaz only testified that he did so on cross-examination.

13

Shabaz contends the government failed to meet its burden of demonstrating voluntary waiver because it did not produce all material witnesses at the evidentiary hearing. Specifically, he argues Oak Lawn detective Christine McGuire, who witnessed portions of Shabaz's interview on December 21, 2007, was not called as a witness. Without citing any authority, he contends that the failure to call McGuire as a witness precluded the government from meeting its burden.

The government responds that an adverse inference from a party's failure to produce a material witness may only be drawn if the evidence shows that the witness was either physically or pragmatically available to only one party. *See United States v. Pizarro*, 717 F.2d 336, 346 (7th Cir. 1983). The government argues it previously provided Shabaz with McGuire's written interview, thereby dispelling the notion that her testimony was available only to the government. *See* Gov. Resp. Ex. A. The government contends that it did not call her as a witness at the hearing because she would have offered cumulative testimony. Indeed, there is no basis in the record to support an adverse inference from the government's decision not to call her as a witness. *Cf. Pizarro*, 717 F.2d at 346.

## CONCLUSION

For the foregoing reasons, Shabaz's objections to the magistrate judge's recommended findings of fact and conclusions of law are overruled. The court adopts the magistrate judge's recommendation in its entirety. The motion to suppress is denied.

ENTER:

Suzanne B. Conlon
United States District Judge

June 2, 2008